UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOCKARD AIRCRAFT SALES CO., INC., | )<br>)<br>) |
| Plaintiff, | ) Case No. 16-CV-469-JED-FHM<br>)<br>) |
| v. | )<br>) |
| DUMONT AIRCRAFT SALES, LLC; DAN PIRAINO; KEVIN WARGO; | )<br>)<br>) |
| Defendants. | )<br>) |

**OPINION AND ORDER**

Before the Court is the defendants' Motion for Partial Summary Judgment (Doc. 81). The defendants seek partial summary judgment on several issues. First, the defendants argue that the plaintiff has acknowledged that his claim is a simple breach of contract claim and there is no evidence of fraud, such that the plaintiff's fraud claim and request for punitive damages should be dismissed. Second, the individual defendants maintain that the plaintiff cannot maintain claims against them as a matter of law. Third, the defendants contend that plaintiff may not maintain any breach of contract claim for commissions on "parts planes," because the parties' agreement does not expressly include "parts planes." The plaintiff filed a response (Doc. 84), and the defendants filed a reply brief (Doc. 87).

**I.   Background**

The following facts are undisputed, except where otherwise noted. Defendant Dumont Aircraft Sales, LLC (DAS) purchases and sells pre-owned aircraft. Defendant

Kevin Wargo is the manager and a principal of DAS, and defendant Daniel Piraino is also a principal. The plaintiff, Lockard Aircraft Sales, Inc. (Lockard) is owned and operated by Dennis and Tammie Lockard. Lockard's business includes buying, selling, and brokering aircraft.

By email, Lockard and DAS entered into an agreement in December 2014. Pursuant to the agreement, Lockard would serve as an independent contractor for DAS and would be responsible for sourcing aircraft deals for DAS, in exchange for compensation, including commissions. Lockard was to receive an annual base compensation of $120,000, paid $10,000 monthly. Once $360,000 in profit was generated from Lockard's annual aircraft sales, Lockard was to receive one-third (33 1/3%) of DAS's net profits of those sales that were above $360,000. (Doc. 81-5).

DAS paid Lockard the annual base compensation of $120,000. DAS also paid commissions totaling $79,659.00 through January 12, 2016. Lockard challenged the amount of commissions paid and subsequently terminated the agreement. Lockard brought suit against DAS for breach of contract and against all defendants for fraud. The defendants removed the action, based upon diversity jurisdiction.

**II.  Summary Judgment Standards**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The court may not weigh the evidence and may not credit the evidence of the party seeking summary judgment and ignore evidence offered by the non-movant. *Tolan v. Cotton*, 572 U.S. 650, 657-59 (2014) (per curiam).

## III.   Discussion

### A.   Fraud Claim

The defendants argue that the plaintiff has acknowledged his claim is a simple breach of contract claim. They also contend that the plaintiff has no evidence of fraud. In support of their arguments, the defendants cite portions of Mr. Lockard's deposition in which he noted numerous bookkeeping "mistakes" and stated that his dispute was based upon DAS's failure to pay Lockard in accordance with the agreement. (*See* Doc. 81 at 19-20 of 31 [citing deposition testimony]). However, the testimony cited by the defendants does not exclude the possibility of fraud. (*See id.*).

Moreover, reading Mr. Lockard's testimony in context, it is clear that he *is* asserting that the defendants intentionally and fraudulently presented false information to Lockard in calculations that related to Lockard's commissions. Mr. Lockard not only testified as to specific examples of what he believed to be intentionally misleading calculations and misrepresentations by the defendants, but Lockard also expressly alleged that such

3

representations were, in his view, "fraudulent." (*See, e.g.*, Doc. 84-3 at 61-67 of 77). For example, Lockard testified that the defendants represented that they were not subtracting Lockard's base pay from commissions, but they were subtracting the base. (*Id.* at 61). He also testified that the defendants' calculations did not truthfully list the amounts at which aircraft were sold. (*Id.* at 62-63). He further identified several other facts that support his fraud claim. (*See id.* at 64-67).

The Court has reviewed all of the record evidence submitted with the parties' briefing, which reveals that there are genuine disputes of material fact regarding Lockard's fraud claim. Taking the plaintiff's evidence as true, as is required at the summary judgment stage, a reasonable jury could find that the defendants knowingly or recklessly made material misrepresentations with the intent that the plaintiff rely upon the false information to accept a lower commission. As a result, the defendants' motion for partial summary judgment as to plaintiff's fraud claim and request for punitive damages will be denied.

**B.    Claims Against the Individual Defendants**

The defendants argue that Lockard cannot maintain claims against them as a matter of law. The defendants argue that the plaintiff's contract was with DAS and not the individual defendants, such that the individual defendants may not be liable on the contract. (*See* Doc. 81 at 24 of 30). Lockard's breach of contract claim is against DAS, not the individual defendants. (Doc. 2-1 at 9 [First Cause of Action]). The individual defendants are the subject of plaintiff's Second Cause of Action, which alleges fraud. (*See id.* at 9-10 [Second Cause of Action]). It is well-settled that a corporate entity's officers and agents may be liable for their own tortious conduct. *See Okla. Federated Gold & Numismatics,*

*Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994); *Smoot v. B & J Restoration Servs., Inc.*, 279 P.3d 805, 814 (Okla. Civ. App. 2012); *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015) ("As the human through which the corporate principal acts, '[a] corporate officer can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant.' . . . 'This includes situations where a corporate agent participates in corporate fraud.' 'It is immaterial that the corporation may also be liable.'") (citations omitted).[1]

Lockard has presented evidence to support its claim that the defendants presented Lockard with spreadsheets that intentionally misrepresented pricing, costs, and sales in an effort to reduce the amount of commissions owed to plaintiff and that the individual defendants made oral misstatements to the plaintiff. (*See* Doc. 84-3 at 61-69). Lockard also alleges that the individual defendants engaged in fraudulent conduct in relation to presenting inaccurate information in relation to a sale of an aircraft to another entity in which the individuals were also principals. Participation by the individual defendants in such alleged tortious conduct subjects them to liability for their own tortious conduct, as noted above. As a result, the motion as to that issue will be denied.

---

[1] The defendants assert that Delaware law should apply because that is where the agreement was performed, while the plaintiff argues that the contract was made by an offer extended to plaintiff in Oklahoma, was accepted in Oklahoma, and was performed by plaintiff in Oklahoma, requiring commissions to be paid to plaintiff in Oklahoma. The parties' email agreement does not indicate any agreement on choice of law. The parties have not identified a material distinction or conflict between Oklahoma and Delaware law on the issues presented in the motion for summary judgment. (*See, e.g.,* Doc. 81 at 19 of 30, fn.1, 2, 3, 4, 5, 7, 8, 9 [noting Oklahoma and Delaware law do not differ]). As no "conflict" has been presented, the Court declines at this time to determine a hypothetical conflicts issue.

### C.   "Parts Planes"

The defendants argue that the plaintiff's contract claim as to parts planes must fail because the agreement did not expressly mention "parts planes."  On the other hand, the plaintiff points out that, consistent with the parties' prior dealings, the agreement included all sales of aircraft, because it did not carve out an exception for parts planes.  The agreement, the terms of which were derived through a back and forth email exchange, does not mention "parts planes."  (*See* Doc. 81-5).  However, the agreement refers to profits calculated "per plane" and a commission of 33.3% on Lockard's "aircraft sales," without excluding profits from parts planes.  (*See id.*).

While DAS contends that the agreement unambiguously excludes parts planes because it does not specifically mention them as a separate type of plane or aircraft, the agreement does *not* exclude them, but instead refers to "aircraft sales" and "planes."  In addition, the agreement indicates it applies to selling out of DAS's inventory and "any new deals we find together."  (*See id.*).  Lockard has also presented evidence of the parties' history of dealings, which included parts planes, and Mr. Lockard's understanding that his commission above $360,000 in profits would be calculated as to all planes, including parts planes.  (*See* Doc. 84-3 at 12-16 of 77).  DAS ultimately paid Lockard only 33.3% of a flat fee of $5,000 or $10,000 on parts planes, which was not consistent with the formula for commissions in the agreement.  DAS contends that the different formula was discussed at some point after the agreement was reached, but Lockard denies that any conversation or separate agreement was reached.  The evidence as to this issue presents a genuine dispute of material fact for a jury.

**IV.     Conclusion**

For the foregoing reasons, the defendants' Motion for Partial Summary Judgment (Doc. 81) is **denied**.

SO ORDERED this 3rd day of September, 2019.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT